IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PAMELA STANDIFER,

        Plaintiff,                No. CIV S-07-2212 KJM

    vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.         <u>ORDER</u>
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/////

/////

/////

/////

/////

I. Factual and Procedural Background

In a decision dated June 18, 2007, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found plaintiff has severe impairments of a psychotic disorder not otherwise specified and depression but these impairments do not meet or medically equal a listed impairment; plaintiff has no past relevant work; plaintiff can perform unskilled work at all exertional levels; using Medical-Vocational Rule 204.00 as a framework for decisionmaking, there are a significant number of jobs in the national economy that plaintiff can perform; and plaintiff is not disabled. Administrative Transcript ("AT") 14-17. Plaintiff

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

contends the ALJ improperly evaluated the record medical opinions.

II. Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)). The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

III. Analysis

Plaintiff contends the ALJ accorded improper weight to the opinions of plaintiff's treating mental health practitioners. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a

3

treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Plaintiff contends the ALJ committed error by rejecting the opinions of Drs. Repasky, Franklin and Ali because they estimated plaintiff's GAF was in a range that would indicate it would be difficult for plaintiff to keep a job.[2] Pl.'s Mem. P. & A. at 8:27-28. "Dr." Repasky is not a doctor, but a social worker who saw plaintiff in conjunction with treatment while plaintiff was incarcerated. AT 533. Because social worker Repasky is considered an "other" source of information, her opinions are entitled to less weight than that of a licensed

---

[2] Plaintiff's failure to provide pinpoint cites to any medical opinions of record in the administrative transcript in support of this contention makes meaningful review by the court difficult, at best.

4

psychologist.[3]  The mental status exam performed by social worker Repasky in August 2006 was within normal limits.  AT 533; see also AT 534 (plaintiff assessed by different practitioner in August 2006 as having mental status exam without pertinent negative or positive findings); AT 523 (mental status exam within normal limits in January 2007).  Plaintiff does not explain how a normal mental status exam translates into functional limitations so restrictive that plaintiff is unable to perform any work activities.

Similarly, "Dr." Ali is a social worker, not a licensed psychologist.  AT 178.  In October 2003, this social worker assessed plaintiff with a GAF of 50.  AT 177.  Plaintiff's reliance on the assessed GAF of 50[4] as undermining the ALJ's findings is misplaced.  Social worker Ali made no assessments with respect to work functions and the GAF does not correlate to the severity assessments utilized in Social Security disability determinations.[5]  With respect to

---

[3] Licensed psychologists are considered "acceptable medical sources," and social worker's reports are considered "other sources" of information.  20 C.F.R. §§ 404.1513(a),(e) & 416.913(a), (e).  Similar guidelines apply when weighing conflicting opinions from "acceptable medical sources."  See 20 C.F.R. §§ 404.1527, 416.927.  Accordingly, the opinions of physicians and licensed psychologists, both "acceptable medical sources," have the same status when assessing weight.  No specific guidelines exist for weighing opinions from "other sources."  Opinions from "other sources" are thus given less weight than opinions from "acceptable medical sources."

[4] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 ("DSM IV-TR").  A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers.)  Id.  A 41-50 rating indicates serious symptoms such as suicidal ideation, severe obsessional rituals, or serious impairment in social, work, or school functioning.  Id.

[5] 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) provides in pertinent part:

Comment: Two commenters recommended that we discuss the Global Assessment of Functioning (GAF) Scale in the introductory paragraphs of final 12.00D.  They noted that we referred to the GAF scale in the preamble to the NPRM (56 FR at 33132) and seemed to encourage its use, but then failed to mention it in the proposed rules.
Response: We did not adopt the comment.  We did not mention the GAF scale to endorse its use in the Social Security and SSI disability programs, but to indicate why the third sentence of the second paragraph of proposed 12.00D stated that an individual's medical source "normally can provide valuable additional functional information." To assess current treatment

the GAF of 50, impairment in the inability to work is only one example of the level of adaptation meriting such a rating. There is no indication in the record that social worker Ali's assessment was based on an inability to work. Moreover, the GAF of 50 is on the borderline of the 51-60 range, which indicates only moderate symptoms.

Dr. Franklin, as a licensed doctor, is considered an acceptable medical source. However, Dr. Franklin offered no opinions regarding plaintiff's functional limitations with respect to work activities. AT 412. As with the GAF of 50 assessed in October 2003, the GAF of 47 assessed by Dr. Franklin in January 2004 does not undermine the ALJ's conclusion. Based on the opinions of the examining consultative psychologist and state agency physicians and the entirety of the medical record, the ALJ's conclusion that plaintiff retains the residual functional capacity to perform unskilled work at all exertional levels is well-founded. AT 16-17, 131-138, 142-145, 191, 224, 277, 381, 384-401.

The ALJ's decision is fully supported by substantial evidence in the record and based on the proper legal standards. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment or remand is denied, and
2. The Commissioner's cross-motion for summary judgment is granted.

DATED: March 31, 2009.

_____
U.S. MAGISTRATE JUDGE

006
standifer.ss

---

needs and provide a prognosis, medical sources routinely observe and make judgments about an individual's functional abilities and limitations. The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings.